UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEAYO JAWAN BRIDGES,<br>Defendant. | Case No. 24-20202<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

## OPINION AND ORDER DENYING MOTION TO SUPPRESS (ECF NO. 30)

### I.    Introduction

Defendant Deayo Jawan Bridges ("Bridges") is charged with being a felon in possession of a firearm and moves to suppress all evidence seized pursuant to the execution of a search warrant and his subsequent custodial interrogation. ECF Nos. 11, 30. The parties have fully briefed the motion (ECF Nos. 30, 33, 34), and the Court held an evidentiary hearing on July 24, 2025. ECF No. 44. The parties submitted supplemental briefing following the hearing (ECF Nos. 46, 47, 48, 50, 51), and the Court finds this matter is now ripe for decision. For the reasons below, the Court denies the motion.

### II.    Factual Background

On March 27, 2024, Special Agent Todd Monfette ("Monfette") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") applied for a warrant to search the Flint residence of Samonte Harris ("Harris"), a previously convicted felon and Bridges' cousin. ECF No. 33-1. The affidavit submitted with the search warrant application states that ATF had been investigating Harris and his co-conspirators since January 2024 for violations of federal narcotics and firearms laws and conducted six controlled purchases of illegal narcotics and firearms through undercover agents ("UCA") from January to March 2024. *Id.* at PageID.195, ¶ 3. The six controlled purchases of Fentanyl pills—facilitated by cell phone communications with Harris—took place at Harris' home in Flint (referred to as the "Residence"). Some of the transactions included the sale of firearms. The UCAs observed drugs, manufacturing equipment, and firearms in plain view while inside the Residence. Transactions also involved the presence of unknown males inside and outside of the Residence and Harris making multiple phone calls to his suspected supplier. In the third week of March 2024, two UCAs went to the Residence to purchase fentanyl and a firearm. *Id.* at PageID.203-06. At one point during the transaction, Bridges walked into the living room, and UCA-2 allegedly observed "a black handled pistol with a clear extended magazine in the right of Bridges' hooded sweatshirt."

*Id.* at PageID.204, ¶ 42. Monfette stated that the ATF knew Bridges "from a subsequent investigation." *Id.*[1]

Based on the information obtained during the undercover operation, the ATF believed Harris was distributing controlled substances in violation of 21 U.S.C. § 841(a)(1), illegally possessing a firearm pursuant to 18 U.S.C. § 922(g)(1), and using or carrying firearms during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Relevant to the issue presented in Bridges' motion to suppress, the affidavit stated that there was probable cause to search the cousin's home in Flint and its "occupants," including Harris, for "any digital media including but not limited to cell phones . . . that could contain photographs, contacts, and contents therein, that may contain evidence of [21 U.S.C. § 841(a)(1), 18 U.S.C. §§ 922(g)(1), 924(c)]" because drug traffickers often use multiple cell phones in furtherance of their business, and people who illegally possess firearms

---

[1] At the evidentiary hearing, Monfette testified that Bridges was known to the ATF from a prior investigation and was previously identified as an individual associated with the Residence at the time of this transaction. ECF No. 49, PageID.291. As it relates to any subsequent investigation of Bridges, Monfette testified that after he reviewed the video footage obtained from one of the UCAs, he observed Bridges as being present during this transaction. *Id.* at PageID.292-93. UCA-2 (Special Agent Bowling) then identified Bridges with the help of other officers. *Id.* at 293, 331. Monfette also testified that he conducted a search of Bridges' prior criminal history and was aware of his felony conviction before the search warrant was executed. *Id.* at PageID.296.

often utilize cell phones to take videos and pictures of themselves possessing firearms. *Id.* at PageID.209, 211-12. Specifically, the provision of the warrant at issue here states as follows:

> 1. The government is entitled to seize all information that constitutes fruit, evidence, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) – Distribution of Controlled Substances, 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm, and 18 U.S.C. § 924(c) – Use or carry a Firearm during or in relation to a drug trafficking crime involving the occupants of [redacted], Flint, Michigan, and Samontee Harris, including but not limited to the following matters:
>
> ***
>
> > e. any digital media including but not limited to cell phones, digital cameras, computers, hard drives, digital video recording devices (DVR) compact discs and flash drives that could contain photographs, contacts, and contents therein, that may contain evidence of the above-referenced criminal violations[.]

*Id.* at PageID.212. On March 27, 2024, Magistrate Judge Morris of the Eastern District of Michigan approved the application and signed the warrant. ECF No. 33-1.

When the police executed the warrant on April 4, 2024, they found Bridges and his unnamed friend ("Jane Doe" or "Doe") in the basement of the Residence, where he was temporarily staying due to a power issue at his own home. ECF No. 30, PageID.156. Agents then saw a gun near Jane Doe's side of the bed. Although Doe produced registration showing that the gun was hers, the agents believed there was probable cause to arrest

Bridges for being a felon in possession of a firearm as he "likely had access" to Doe's gun and because they had "observed him with a firearm on his person" during the undercover purchase two weeks prior. ECF No. 33, PageID.190-91, 204. Bridges was arrested at the Residence and subsequently driven to an ATF office where Monfette administered his *Miranda* warnings. ECF No. 30, PageID.157. Bridges' phone was seized from the basement as part of the execution of the search warrant. While in custody, Bridges waived his *Miranda* rights and consented to the search of his phone for drug-related texts only by providing them with his passcode. ECF No. 30, PageID.160. However, Monfette went through Bridges' camera roll and found a photograph[2] of him lying in bed with two firearms. ECF No. 30, PageID.160. Bridges admitted that one of the guns he was holding in the photograph was seized during the execution of the search warrant and that he was a felon. ECF No.1, PageID.4-5.[3] On April 17, 2024, Bridges was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 11. Bridges moves to suppress

---

[2] The photograph was taken March 21, 2024—the same day as the sixth undercover transaction where UCA-2 saw Bridges with a gun on his person. ECF No.1, PageID.5.

[3] A Computerized Criminal History of Bridges ran on April 4, 2024 confirmed his felony convictions. ECF No.1, PageID.3.

his statements to ATF officers, his cell phone, and the contents found in his cell phone. ECF No. 30.

## III.    Analysis

Bridges seeks to suppress all evidence obtained from his cell phone and the statements made to the ATF agents, arguing that the search and his subsequent arrest violated the Fourth Amendment due to a lack of probable cause. He argues that the government did not have probable cause to arrest him or search his phone because: (1) there is no evidence that he was involved in his cousin's drug trafficking operation; (2) they lacked probable cause to believe that he possessed a firearm during the March 2024 undercover drug transaction; and (3) the firearm found in his room was registered to Jane Doe, and the fact that he "likely had access" to the gun is not probable cause. He also claims that the search warrant did not authorize the search and seizure of his cell phone and was unconstitutionally broad, and that Monfette exceeded the scope of his consent when they searched his phone. ECF No. 30, PageID.157-158, 163, 166. Thus, Bridges argues that all evidence is tainted and inadmissible, despite being *Mirandized*. ECF No. 30.

In response, the government argues that the search of his phone was supported by probable cause and expressly allowed by the search warrant

because evidence of drug trafficking and felon in possession violations is commonly found in cell phones. The government also contends the search warrant explicitly allowed the search of cell phones belonging to the residence's occupants at the time of its execution— so Bridges' consent was not needed to go through his photographs. Alternatively, the government argues that if the Court finds that there was not probable cause to search his cell phone, that it should find the search permissible based on the good faith reliance doctrine. The government further claims it had probable cause to arrest Bridges as being a felon in possession because the government had "prior knowledge" of him when UCA-2 saw him possessing a gun during transaction 6, and he was in close proximity to Doe's firearm when the ATF executed the search warrant. ECF No. 33, PageID.191. Finally, the government asserts that Bridges' statements made to the ATF officers are admissible because he waived his *Miranda* rights.

The Fourth Amendment mandates that there must be probable cause for any search and seizure. U.S. Const. Amend. IV. "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Padro,* 52 F.3d 120, 122–23 (6th Cir. 1995) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)). "To demonstrate probable cause to justify

the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005) (internal quotation marks and citation omitted). "Probable cause is based on the totality of the circumstances; it is a 'practical, non-technical concept that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud,* 438 F.3d 554, 571 (6th Cir. 2006) (quoting *Frazier*, 423 F.3d at 531). Under the exclusionary rule, evidence obtained from unreasonable searches and seizures is inadmissible at trial, as well as derivative evidence acquired as a result of an unreasonable search. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

Where, as here, the Court must review another court's decision to issue a search warrant, the Court must afford "great deference toward the issuing judge's determination . . . [and] examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021) (citations omitted); *see Whiteley v. Warden,* 401 U.S. 560, 565 n.8 (1971); *Aguilar v. Texas,* 378 U.S. 108, 109 n.1, (1964), *abrogated on other grounds by Illinois v. Gates,* 462 U.S. 213, 238 (1983).

Moreover, the Court must rely on a "'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id.*

### A. Probable Cause Underlying the Cell Phone Search

Bridges seeks to suppress all evidence found in the search of his cell phone. First, he argues that the warrant did not cover his cell phone. Second, even if the warrant did include his phone, Bridges argues probable cause did not support that conclusion.

The Court rejects Bridges first argument. The warrant authorized the search of "any digital media including but not limited to cell phones" involving "the occupants of [Residence], and Samontee Harris" that may contain evidence of distributing controlled substances, a felon possessing a firearm, or using or carrying a firearm during or in relation to a drug trafficking crime. ECF No. 33-1, PageID.211. Bridges' phone falls squarely within that description. ATF found it at the Residence, Bridges was an occupant of the Residence, and his phone could have contained evidence of the cited criminal violations. Thus, the warrant covered his phone.

Bridges next argues the search warrant lacked probable cause to seize and search his phone, asserting that there was an insufficient causal nexus between him and Harris' criminal activity. He also challenges the warrant as overly broad, claiming its authorization to search and seize any

cell phone located within the residence lacked the particularity required under the Fourth Amendment.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In determining whether probable cause exists to support a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238. To justify a search, the circumstances must indicate why evidence of an illegal activity will be found in a "particular place." *Id.* Accordingly, "[t]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski,* 625 F.3d 953, 958 (6th Cir.2010) (citation omitted). Like any subject of a search warrant, the supporting affidavit must establish a nexus between the cell phone and the criminal activity under investigation. *See United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (finding that a warrant affidavit supported the search of the defendant's cell phone because the affidavit

provided that the co-conspirators frequently used cell phones to communicate and defendant was using the cell phone in question at the time of his arrest).

Here, the affidavit states that all purchases that occurred at the Residence were facilitated by "electronic communications" between Harris and the UCAs. Harris was observed making multiple phone calls to the suspected fentanyl supplier during the fourth transaction, placing a phone call to an unknown person regarding the purchase of a firearm, and using his cell phone to coordinate transactions with the UCAs. ECF No. 33-1, PageID.202, 205 ¶¶¶ 35, 44, 45. Monfette further stated—based upon his training and experience—that:

> Drug traffickers often use cellular phones to set up narcotics transactions, maintain numbers for customers and suppliers, and store other information (e.g., addresses) used in furtherance of their ongoing narcotics business as Harris has done in this case during the six (6) controlled purchases. These cell phones are frequently purchased without subscriber information, thus making it difficult for law enforcement to identify the true owner of the cell phone. It is common for drug traffickers to keep multiple phones or to change phones in order to evade detection by law enforcement. Drug traffickers generally keep the cell phones close at hand or at their residence, so they can arrange transactions when they are not at the location where their drugs are stored.
>
> ***
>
> Individuals who possess firearms frequently utilize cell phones to take photographs and videos of themselves in possession of firearms. These same individuals also utilize cell phones, to include calls, texts, and social media applications, to arrange the

purchase and sale of firearms, ammunition, and/or accessories. I have personally reviewed dozens of forensic extractions of cell phones seized from individuals illegally possessing firearms and observed pictures and videos of the individuals possessing firearms and communicating through calls, texts, and social media applications regarding purchasing or selling firearms, ammunition, and/or accessories.

*Id.* at PageID.207-09, ¶¶ 53, 55. The affidavit thus established a nexus between cell phones and the criminal activity under investigation such that the warrant allowed the search and seizure of all cell phones found within the residence.

The affidavit also attempts to establish a link between Bridges and the investigation by specifically mentioning Bridges' name and birthdate and identifying him as a person known to the ATF from a prior investigation. According to Monfette, Bridges was present in the living room during the final controlled transaction and was observed having a "black handled pistol with a clear extended magazine in the right pocket of [his] hooded sweatshirt." *Id.* at PageID.204, ¶ 42. The government contends that considering these facts, in addition to the affiant's training and experience regarding how cell phones are used by drug traffickers and felons possessing firearms, there was a "fair probability" that Bridges' phone could contain evidence of drug trafficking and firearm possession. ECF No. 33, PageID.189.

Indeed, "[c]ourts have recognized the importance of cell phones in coordinating criminal enterprises, particularly in drug trafficking conspiracies." *United States v. Griffin*, 2022 WL 2072042 (E.D. Mich. June 8, 2022) (collecting cases); *see also United States v. Hawkins*, 426 F. Supp. 3d 447, 453–54 (E.D. Mich. 2019) (in assessing whether a warrant, which allowed for the search and seizure of any cell phone found in the home, provided probable cause to search phone belonging to the target's brother, the court found that information regarding the brother's involvement in selling marijuana for the target coupled with detective's training and experience about how drug traffickers used cellphones provided probable cause to seize the brother's phone). *See generally United States v. Gholston*, 993 F. Supp. 2d 704, 719–20 (E.D. Mich. 2014) (collecting cases where police could infer that a cell phone discovered in relation to drug conspiracies involving multiple actors contained evidence of criminal activity).

Nonetheless, Bridges contends that these inferences, even when viewed in light of the information in the affidavit, fail to establish a "fair probability" that evidence of Harris' trafficking operation would be found on his phone because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable

cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). The Court, however, need not decide this issue because the Court finds that the officers acted in good faith in relying on the warrant.

### B. *Leon* Good Faith Exception

Even if probable cause is lacking to support the issuance of a search warrant, a search may still be upheld under the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). Under this exception, the exclusionary rule will not apply to bar the admission of evidence seized in violation of the Fourth Amendment where the officers had a "good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (quoting *Leon*, 468 U.S. at 905). The "good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *Leon*, 468 U.S. at 922–23 n.23. Because "the exclusionary rule seeks to deter police (not judicial) misconduct[,]" then the court will not fault an officer who reasonably relies on an issuing court's determination of probable cause. *United States v.*

*Reed*, 993 F.3d 441, 450 (6th Cir. 2021) (citing *Davis v. United States*, 564 U.S. 229, 239 (2011).

The good-faith defense will not apply, however, where: (1) the supporting affidavit contains information the affiant knew or should have known is false; (2) the issuing magistrate lacked neutrality and detachment; (3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) the warrant is facially deficient. *Leon*, 468 U.S. at 923; *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citations omitted).

First, nothing suggests that the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* Similarly, no facts support a finding that "the issuing magistrate wholly abandoned [her] judicial role" or that the warrant was "so facially deficient" such that the executing officer could not reasonably presume it to be valid. *Id.* Based on the briefing, it appears that Bridges raises only the third scenario, otherwise "known as [the] 'bare bones' affidavit" exception. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citing *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)).

"A bare-bones affidavit" is "one that states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)) (additional citation omitted). Indeed, a warrant affidavit can only be considered "bare bones" when there exist "no reasonable grounds for believing that the warrant was properly issued." *Id.* at 506 (quotation marks and citation omitted). In comparison, "an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc)). "If the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been'— 'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)).

Bridges argues that "[t]here was no way the agents could have reasonably believed there would be anything regarding Harris' drug-trafficking on Deayo's phone." ECF No. 34, PageID.225. But here, the

Page **16** of 27

supporting affidavit was sixteen pages and contained a substantial amount of detail into the underlying drug trafficking investigation, the presence of Bridges and unknown men inside of the Residence during the controlled transactions, Harris' use of cell phones to effectuate purchases, and contained several paragraphs of information describing how drug traffickers use multiple cell phones to carry out their crimes. Therefore, there was ample cause for police to believe that multiple electronic devices found in the residence could contain evidence of the suspected crimes. Adding to the reasonableness of the officers' reliance on the warrant is the fact that Bridges was specifically named in the warrant as someone known to the ATF from a prior investigation and being present during one of the transactions with a gun on his person. Thus, agents reasonably could have believed connection to drug-trafficking related activity and felon in possession crimes and that evidence of those crimes, such as photographs, would be on his cell phone. Accordingly, even if the affidavit failed to provide probable cause to seize and search any cell phone other than Harris', the Court believes that the good-faith exception to the exclusionary rule applies and precludes the suppression of his cell phone and the contents of his cell phone.

### C. Probable Cause Underlying the Arrest

Bridges next argues that the government's warrantless arrest of him as a felon in possession lacked probable cause.[4] The government asserts two theories as to the existence of probable cause. First, probable cause existed because UCA-2 observed him with a firearm during the March 21, 2024 transaction. Second, the government argues a constructive possession theory on the grounds that Bridges was near and "likely had access to" Doe's gun when ATF executed the search warrant. ECF No. 33, PageID.190. For the following reasons, the Court finds that probable cause existed to arrest Bridges as being a felon in possession under the first theory.

The Fourth Amendment requires that all arrests be supported by probable cause. *Ingram v. City of Columbus,* 185 F.3d 579, 592–93 (6th Cir.1999). As the Supreme Court has explained, "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle,* 540 U.S. 366, 370 (2003) (internal citations and quotations omitted). While not capable of precise quantification, it is well-established that probable cause means "a

---

[4] The parties do not dispute whether or not Bridges was arrested when the officers handcuffed him and took him to the ATF office in a squad car.

reasonable ground for belief of guilt," which is certainly a lesser standard than "evidence which would justify condemnation or conviction." *Brinegar v. United States,* 338 U.S. 160, 175 (1949) (internal quotations omitted); *see also United States v. Strickland,* 144 F.3d 412, 416 (6th Cir.1998) (stating that while probable cause requires more than mere suspicion, it does not require "evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt").

When determining if a police officer had probable cause to conduct a warrantless arrest, the Court looks to the totality of the circumstances and decides "whether the[ ] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Pringle,* 540 U.S. at 370 (internal quotations omitted); *see also Romero,* 452 F.3d at 616 (explaining that the totality of the circumstances test applies to probable cause determinations). Thus, the evidence available to the officer must be sufficient to lead a reasonable person to believe that the arrestee has probably committed or was about to commit a crime. *See Strickland,* 144 F.3d at 415; *see also Pringle,* 540 U.S. at 371 (indicating that probable cause must be particularized with respect to the person arrested).

As previously stated, Bridges is charged with being a felon in possession. 18 U.S.C. § 922(g) provides in pertinent part:

It shall be unlawful for any person—who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The elements of § 922(g) are: "(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce." *United States v. Moreno,* 933 F.2d 362, 372 n.1 (6th Cir.1991) (internal citation omitted). In the Sixth Circuit, corroboration of the fact that the defendant was a felon, as well as evidence of possession of a firearm, is necessary to establish probable cause. *See United States v. Smith,* 182 F.3d 473, 480 (6th Cir.1999); *see also United States v. Parks*, 2009 WL 3817435, at *6 (E.D. Tenn. Nov. 13, 2009) (finding that "[e]ven in the absence of an arrest warrant, [arresting officer's] knowledge of Defendant's status as a convicted felon combined with notice of the firearm in his possession provides probable cause to arrest Defendant on the charge of a felon in possession of a firearm.").

The Court believes, looking at the totality of the circumstances, the "historical facts, viewed from the standpoint of an objectively reasonable police officer" establish that there was probable cause to arrest Bridges for being a felon in possession of a firearm. *Pringle*, 540 U.S. at 370 (internal

quotations omitted). When Bridges was arrested on April 4, 2024, ATF already had the following information: (1) UCA-2 observed a "black handled pistol with a clear extended magazine in the right pocket of Bridges' hooded sweatshirt" when he walked into the living room on March 21, 2024 (ECF No. 33-1, PageID.204, ¶ 42); (2) UCA-2 (now known as ATF Special Agent Daniel Bowling), testified at the hearing that he interacted with Bridges for about ten minutes that day and was about 6 feet away from him when he observed the firearm in Bridges' sweatshirt, describing in detail his observations of the gun, including its unique features and ammunition, and recounted his familiarity with firearms (ECF No. 49, PageID.332); (3) Agent Bowling testified that in his personal experience, that most firearms and ammunition are manufactured outside of Michigan (ECF No. 49, PageID.340); (4) ATF knew of Bridges from a prior investigation and confirmed it was him possessing the firearm on March 21 after Agent Bowling's observations, and provided his full name and redacted birth date in the affidavit supporting the search warrant; (5) Agent Monfette, the affiant for the search warrant—who was also present for the execution of that warrant, testified at the hearing that he conducted a search of Bridges' prior criminal history before the search warrant (ECF No. 49, PageID.296); and (6) Monfette knew that Bridges had a felony conviction before he executed

the search warrant (ECF No. 49, PageID.296). Thus, when the search warrant was executed and Bridges was present in the Residence, Monfette testified that there was probable cause to arrest him for being a felon in possession because he knew he was a previously convicted felon and that Bridges possessed what was believed to be a firearm during the investigation. *Id.* at PageID.311.

Despite these facts, Bridges argues that the ATF did not have probable cause to believe he illegally possessed the firearm. Regarding the March 21 encounter, Bridges claims, without providing supporting authority, that merely seeing him with a "gun" two weeks before he was arrested involves a level of staleness. ECF No. 30, PageID.161. Moreover, he claims that probable cause is lacking because he was not arrested on March 21, and thus it cannot be determined whether the firearm he allegedly possessed met the definition of a firearm or if it was manufactured outside of Michigan to meet the interstate commerce element of the charged crime. ECF No. 34, PageID.221.

The Court finds Bridges' unsupported staleness argument unavailing. As the government points out, arresting Bridges on March 21 "would have been impractical in th[e] circumstances" because Agent Bowling needed to confirm Bridges' identity, and that arresting Bridges in that moment would

have "created an unreasonable risk to law enforcement and compromised the ongoing investigation." ECF No. 47, PageID.280. So even though there was not an arrest warrant for Bridges when the search warrant was executed, there was still probable cause to arrest Bridges based on the firearm in plain view on March 21 combined with the knowledge that he was a convicted felon.

Bridges further fails to support his assertion that there was no probable cause to arrest him at that time because it could not be determined whether the firearm he possessed met the interstate nexus element of § 922(g). As previously stated, probable cause to arrest a defendant for being a felon in possession only requires evidence of possession of a firearm and knowledge that the defendant was a felon. *See Smith,* 182 F.3d at 480; *see also Parks*, 2009 WL 3817435, at \*6. But, in any event, Agent Bowling's testimony that most firearms and ammunition are manufactured outside of Michigan would be sufficient to lead an objectively reasonable police officer to believe the same was true of the firearm possessed by Bridges and thus amounted to probable cause that he was committing a crime. *See Pringle,* 540 U.S. at 370-71; *Strickland,* 144 F.3d at 415; *see also United States v. Romero*, 452 F.3d 610, 616 (2006) (explaining that the totality of the circumstances test applies to

probable cause determinations). The Court finds the facts known to the officers at the time of arrest sufficient to establish probable cause to believe Bridges possessed a firearm in violation of federal law on March 21, 2024, and his arrest was therefore lawful.

### D. Statements Made After Arrest

Lastly, Bridges contends that the administration of *Miranda* warnings at the ATF office cannot cure his unlawful arrest. ECF No. 34, PageID.224. Thus, he argues that the physical and verbal evidence obtained after being *Mirandized*, such as his statements made to ATF officers and the contents of his cell phone, must be suppressed as fruits of the poisonous tree. *Id.*

Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). There is no dispute that Bridges was in custody when Agent Monfette questioned him. Under *Miranda*, a suspect must be advised of his or her Fifth Amendment rights prior to any questioning. *Id.* at 444. A suspect may waive those rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that the police must immediately cease their questioning if, at any time during the interrogation, the suspect indicates that he or she wishes to remain silent or

consult an attorney. *Id.* at 484–85. Additionally, in *Brown v. Illinois*, 422 U.S. 590 (1975), the Supreme Court held that because the defendant was arrested without probable cause and without a warrant, and while in custody made two inculpatory statements, the statements should be excluded as the fruit of the illegal arrest under W*ong Sun v. United States*, 371 U.S. 471 (1963), even though the defendant was subsequently provided full *Miranda* warnings.

After his arrest, Bridges was taken to an ATF office in Flint and given his *Miranda* warnings by Monfette before interrogation commenced. ECF No. 49, PageID.313. Bridges waived his *Miranda* rights—a point he does not contest, *Id.* at 325, and acquiesced to Monfette's request to provide his cell phone password. Although Bridges asserts that he only consented to Monfette searching his text messages, Monfette testified that he searched through Bridges' pictures because the warrant permitted him to do so and "because it's a common thing where individuals take photographs of themselves with firearms or things that they are not supposed to have." *Id.* at 319-20. As a result of the phone search, Monfette uncovered the picture of Bridges "snuggling" two firearms, which formed the basis of the present charge. Monfette then presented the photograph to Bridges, at which point Bridges admitted that it was him in the photograph, that it was the same

gun that they recovered during the search warrant, and that he possessed it the day the officers were at the Residence. *Id.* at 324. These statements and photograph are the evidence Bridges looks to have suppressed pursuant to *Brown*.

But the Court finds that suppressing Bridges' statements as fruits of the poisonous tree is unwarranted because his arrest was lawful and based on probable cause. Bridges was advised of his *Miranda* rights before custodial interrogation, and his statements were made after he waived those rights. Additionally, Bridges does not challenge the validity of his *Miranda* waiver nor argue that it was anything but voluntary, knowing, and intelligent. Furthermore, as previously noted, the search warrant authorized the search of Bridges' cell phone and its photographs, and Monfette acted in good faith reliance on that warrant when seizing and searching the phone.  Accordingly, Monfette's search of the photographs on Bridges' cell phone did not require his consent.

## IV.   Conclusion

For the reasons above, the Court finds that the search and seizure of Bridges' cell phone did not violate his Fourth Amendment rights and that there was probable cause to arrest him.  Accordingly, the Court **DENIES**

Bridges' motion to suppress his statements and evidence recovered from his cell phone (ECF No. 30).

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR

Dated: October 10, 2025                    United States District Judge